All right, we'll call the next case, Lincoln General v. U.S. Auto et al., and we'll hear first from Mr. Crosno. May it please the Court, Counsel, my name is Wade Crosno, and I'm here along with my partner Bill Radford on behalf of the appellant in Cross Appley, Lincoln General Insurance Company. I have one, what I'll call an overarching point that I would like to make here in my opening 15 minutes and a few subsidiary points. The overarching point is just a general observation about what happened here, which is that the District Court entered judgment against two companies that the $16.5 million in missing funds passed through, and those two companies were CSI and Alpha, but did not enter judgment against the company that had the fiduciary duty for those funds, which was U.S. Auto, and did not enter judgment against the two individuals who were principals of those companies who orchestrated the transfers and who made off with the money. Are these companies all solvent or not? Your Honor, they do not appear to be. We know that there was evidence in the record that U.S. Auto certainly is not solvent. There was one company, Santa Fe, that's in receivership. The two companies that have the judgment against them, CSI and Alpha, have not posted a supersedious bond, so I think the answer is no, and that recovery would need to be from the individuals. There may be some money there that we would ultimately be able to get. So how did the Court reach what, on its face, appears to be a pretty perplexing result? We contend that there was a couple of errors that the District Court committed. You're not claiming any more than the $16.5 million, or are you claiming more than that? No, we're claiming that the $16.5 million are the damages, and that's what we would be seeking if we got remanded against some of these other defendants. I think it's a correct statement that all of the claims have now been resolved. The underlying claims have been resolved, and we know what the damages are. There may be one other element of damages, but I think, by and large, it's the $16.5. Now how did the Court reach this result? First of all, the Court declined to enter a $16.5 million contract judgment against U.S. Auto, despite the party's stipulation that $16.5 was the amount of damages, and despite the District Court's rejection at trial of U.S. Auto's counterclaim that theoretically could have been an offset against that judgment. And also, the Court declined to enter judgment even though U.S. Auto expressly did not oppose entry of judgment in that amount of $16.5 million, and candidly has not opposed it on appeal either. So I think this is a pretty rare situation where the parties agree that at least that was an error. Now the second thing the Court did is granted summary judgment on Lincoln General's breach of fiduciary duty claims, and the Court did so based on what we contend is a misinterpretation of the general agency agreements, which the Court concluded only imposed a fiduciary duty on premiums that U.S. Auto placed in the trust account after deducting its commissions. And the Court adopted that interpretation, even though there is express language in Section 7.1 of the agency agreements that says that the fiduciary duty applied to all premiums and other funds, regardless of the privilege of retaining commissions. And so the Court, in our view, improperly disregarded that controlling language. Third, the Court granted summary judgment for Jim Maxwell on the tortious interference claim, even though he was the president and majority owner of both CSI and Alpha, which were the companies on which the Court did enter a tortious interference judgment for $16.5 million. And even though as the president of those companies, he was necessarily involved in the transfers of the funds, the premium dollars to those companies, and ultimately into his own pocket and into his father's pocket. Now, so those are the main errors we are, I want to talk about here today. There are others that we have briefed, and we're relying on our briefing for that unless the Court has questions. Is the damages you got a judgment on, is that duplicative of all these other causes of action that she denied relief on? I don't think they would be duplicative because we don't have a judgment at all against U.S. Auto. We're not complaining about the judgment that we got against CSI and Alpha, and we have other individuals that we claim we should be able to recover the same money from, especially in light of the fact we come back to the issue about whether any of these companies are solvent, which they don't appear to be. What about the defendant's appeal saying that the tortious interference claim should be barred by limitations? I mean, why didn't the injury accrue when the siphoning of funds started? I mean, that's the heart of this case, right, is that they were, in your view, misappropriating these funds to these other entities? If you look at Texas law on the statute of limitations for tortious interference, it says that your claim doesn't accrue until there's interference with the contract, and then there also has to be harm resulting from that. So even though there was money being transferred back in 2002 through 2005, the defendants argued and they presented evidence at trial that they made all of the payments that were required by the agreements to Lincoln General up through April of 2007. They also presented evidence that they paid all of the claims, the underlying claims, up until sometime in late 2006. And so both of those dates were within, really, one year of when we ultimately filed the lawsuit. So the harm did not occur until they were unable to pay us back. So your damages is the percentage you were due that wasn't paid, that's for the 16.5 companies? Yes. Yes. Ultimately, the 10 percent margin that we were entitled to. Is there a claim that you should have discovered it before, by auditing and so forth? They are claiming that, but the financial documents show transfers being made. They don't show whose money it is or why they're being made. And they don't, again, you come back to the issue of whether we are harmed when they have continually been paying us up until at least late 2006, they've been paying all the claims and they've been paying us all the money we're due under the agreement. Did the district court make any findings on these issues? The district court did. But if you look at the district court's transcribed findings of facts, the court concluded that the claims didn't accrue until, as I was saying, until at least late 2006 or early 2007, and that there was nothing in the financial documents that we had that should have indicated to us that there was a problem. The court's findings on those issues were based in part on the court's credibility determinations about our witnesses who testified about these issues, which the court found to be credible, and their witnesses, whom the court found were not credible. Those are really entitled to special deference on appeal. And for that reason, this court should reject the limitations arguments. Now, I do want to talk a little bit more about the breach of fiduciary duty claim against U.S. Auto and come back to this issue about the court's, in our view, misinterpretation of the general agency agreements. The court, again, said that, well, I think the fiduciary duty only applies to funds that U.S. Auto puts in the trust account after it deducts its commission. But the problem with that argument is it's contrary to the express language of the agreement, which says the duty applies to all funds, and it applies regardless of the privilege of retaining commissions. And the reason it did that is to prevent the sort of things that happened here, where they have, where we believe the evidence shows that they manipulated the calculation of the adjusted commissions by excluding incurred but not reported losses. After they'd been doing it for many years, they ran out of money to pay claims, and then all of a sudden they decided that they didn't have to include that factor in the calculations anymore, and they knew when they did that that it would flip the calculations and that the result would be we would start owing them money on paper rather than them owing us money on paper. So . . . If we agree with you on the breach of contract claim, where it's uncontested, really, that there should have been an entry of judgment against U.S. Auto for the contract claim, do we need to get to the fiduciary duty claim? And what does that get you additionally, that a judgment against U.S. Auto on the contract claim wouldn't get you? Well, the breach of fiduciary duty claim would apply not only to U.S. Auto, it would also, we say, apply that Doug Maxwell directly owed us a fiduciary duty, and at the very least could be liable for aiding and abetting a breach of fiduciary duty, and the district court never reached those issues because of its, again, mistaken conclusion that there was no underlying fiduciary duty. Now, U.S. Auto and Doug Maxwell have also raised an alternative argument, well, this fiduciary duty, if it existed, really only applied in favor of state and county mutual, which was the nominal insurer under this agreement, or the fronting insurer, and didn't apply to you, Lincoln General, as the reinsurer, even though you were obviously the real party in interest, and actually an actual party to the contract. I don't want to lead the court to believe that we weren't, because we were a party to the contract. Now, we obtained a written assignment from state and county mutual to avoid that very weird at pages 160 and 161, so that should end the controversy, but I would also point out if you look at the various provisions of the general agency agreements and reinsurance agreements, they're clearly structured to make it clear that even though for regulatory purposes state and county mutual was appointing U.S. Auto as its agent, that really U.S. Auto was acting on behalf of and at the direction of Lincoln General, and we've cited those various provisions in our agreement, and those gave us a fiduciary duty. Now, that leads us to Doug Maxwell, and there are two issues here. One is, did he personally owe a fiduciary duty to us? And second of all, even if he didn't, could he be liable for aiding and abetting a breach of fiduciary duty? Now, he testified in his deposition that he was appointed as a managing general agent of state and county mutual. I understand the defendants say he was mistaken about that, but he testified to it, and the result of that under the Texas Insurance Code is that he had a fiduciary duty in handling the premiums, and that was under section 4053.106, and we would also again argue that this statutory duty applied in our favor because we have the assignment, and also because the district court was mistaken about that. The district court thought that that provision doesn't apply in favor of a reinsurer, but we've cited briefing in our reply brief, or we've cited a case of statutory provision in our reply and response brief that says a reinsurer is an insurer. That's section 4152.001 of the . . . Did the district court make a finding on whether he was a managing agent? No, the district court didn't have to because she got rid of all the breach of fiduciary duty claims just based on the conclusion that there was no fiduciary duty that applied to these funds until after the commission calculation was made and after the money was put in the trust account. So, she never had to get to any of the other issues. Now . . . In your assignment argument, you'd be standing in the shoes of state and county mutual, so you'd only be entitled to their damages, right? How were they damaged? They said they were not damaged, but the twist on this is you have to look back at the nature of a fronting arrangement, which is that they were issuing . . . we were issuing policies in their name. We were stepping into the shoes. The entire agreement was structured so that they would never be damaged. We were to bear 100 percent risk of loss, and they bore no risk of loss, and so that's the way it was structured, and that, I think, helps underscore why the fiduciary duty should apply directly in our favor under this agreement. I understand that, but it does seem to me the assignment doesn't get you very far because they didn't have $16.5 million taken from them. Your client did. We did standing in their shoes, and that's the reason . . . We'll give you another couple minutes if you need it. Okay. I appreciate that, Your Honor. There were some arguments that have been raised that I think are relevant to both the aiding and abetting breach of fiduciary duty claim and also the tortious interference claim against Jim Maxwell, and part of what Mr. Max . . . Jim Maxwell argued was that, you know, he didn't knowingly participate in any breach of fiduciary duty. He didn't know there was any breach of fiduciary duty going on, but I think you have to come back and look at the fact that he was the president and majority owner of CSI and Alpha, the companies that this money passed through on its way into his father's pockets and in his pockets, over $30 million into his pockets over a couple-year period. That's a staggering sum, and to suggest that he didn't knowingly participate in that is, I think, is not a good reading of the evidence. So, for that reason, we believe there was a fact issue on at least the tortious interference claim on the breach of fiduciary duty and aiding and abetting claims. We think there was not only a fact issue as to whether there was a breach. We think we conclusively proved it based on the undisputed evidence and are asking for a rendition, not only reversal, but a rendition of a partial summary judgment on liability on those issues. Okay. Thank you very much. Thank you. Okay. Mr. Rich. May it please the Court, this was a case that involved two sophisticated contracting parties. I think that sometimes we lose sight of that, and that's a very important fact because the has made it clear that the contours of fiduciary duties that arise from a contractual relationship are subject to what the contract says, and we're here to talk about, really, then, what this contract says. Now, it is correct that U.S. Auto does not oppose the appeal insofar as the contract judgment. We didn't have the facts, so we didn't want to put the Court through an additional however long it would have taken to try the contract case. It was the right thing to do, and I don't think any adverse inference against the other defendants ought to be drawn because we did the right thing on the contract claim. This is really about how much water Section 7.1 of the General Agency Agreement carries on the fiduciary duty claim. They read it one way, the district court and we read it a different way. 7.1 says, the agent shall accept and maintain at all times all premiums collected and all other funds relating to the business written under this agreement as a fiduciary for the The privilege of retaining commissions shall not be construed as changing the fiduciary capacity. Well, the fiduciary capacity of what is as to those premiums collected. 7.2 is a specific provision that says how all this works, and it says that they should set up a premium trust account for the premiums and the funds related to the premiums. Those kind of things are policy fees, refunds due to insureds, interest on the money, salvage and subrogation money. There's different pools of money here other than just commissions and premiums, which is the explanation of what that other funds means in 7.1. It says that we take out our money first. Our money comes out first. The commissions and the loss adjustment expenses come out first because it's our money, and then the rest goes into the premium trust account. And that's what the district court said, the fiduciary duty wouldn't kick in until after you've taken your money out, but what if you just took the entire amount and went to Las Vegas? That would not be a breach of fiduciary duty? No, it would not be a breach of fiduciary duty the way this contract is written. That's why it's important to keep in mind that these are sophisticated contracting parties, and they could have said, they could have said that all the money remains fiduciary funds forever until all of the contracts, calculations are done and we're at the end of this relationship and we know precisely what is owed to whom. Of course, the contract said how much they were entitled to withhold. You know, it didn't say they could withhold whatever they wanted to. Yes, it did have a provision that provided what the calculations were. Why wouldn't fiduciary duty be imposed on that if the contract doesn't give them the right to just withhold unlimited amounts? Well, there is, the contract says how the calculation is to be done, and we did the calculation in that manner. We took out our commission first and the adjusted loss, loss adjustment expenses, they came out first, and the fiduciary obligation didn't attach to those funds because if they did, at least until the point in time where all the calculations are done several years down the road and there's been all the true-ups and all that, which is what Lincoln apparently thinks ought to happen, that the money ought to be imprinted with this fiduciary obligation at least until everybody knows what everybody else is owed, but that's just not the way the contract is written. So if you take the way the contract is written and what was done here, I don't think . . . you know, in reading the contract, I think Judge Boyle was correct in the way she read it. The premium trust account is where the fiduciary funds go, and that's where they went. What about this language, U.S. Auto shall accept and maintain at all times all premiums under the agreement as a fiduciary for the company? Yes. That's what it means here, especially . . . that's the language, all premiums collected. At all times, all premiums, and it seems very broad. Well, the premiums are not commissioned. I mean, commission and premiums are different things. I mean, a commission is what you were owed for doing your job, and it's not a premium. It's a commission. And the 7.2 specifically says that comes off the top, and that's the way it was done. And if you want to say all funds at all times, you have to say, well . . . But all premiums collected, I mean, the insured party is paying a premium. And sure, some of it goes to commission, some of it goes to the reinsurer. I mean, the premium is what's being paid from the standpoint, and that's what's being . . . Well, I think that there's a little . . . and if you look at the language of the two sub-clauses, there's kind of a difference that I think can only be explained in the context of exactly what your question is, Judge. You see that the second one refers . . . 7.2 refers to the money as all receipts of the agent relating to policies. That's different language from all premiums collected and all funds relating to the business written. And I think what the difference there that that shows is that 7.2's discussion of all receipts of the agent relating to the policies, I think that's broader than the language in 7.1. Was there anything received other than gross premiums? You mean from the insurers? Well, yes. There were other categories of things. There were policy fees. There was salvage and subrogation money that had been received, like when a car gets destroyed, that money comes in and it goes into the pot. Interest is earned on the money. So there are things that go into that account more than just premiums. And I think all other funds relating to the business, there's sort of an adjustum generis flavor to that, and I think that's the money relating to the premiums, like these fees and salvage and subrogation and things of that nature. And because the language of 7.2, the difference in language has to have a meaning, and all receipts of the agent relating to the policies seems to be more all-encompassing. And it says that it goes into a depository account, just an ordinary, non-fiduciary bank account. And so if you read the contract, and based on the language of the contract and not based on what might happen in the future as far as the actions of the parties, if you're just looking at the contract to try to discern what fiduciary duty the parties agreed to impose here, it seems that the district court was correct that it was the money that's supposed to be in trust is the money that's not commissions and not loss adjustment expenses. Because the consequence of holding the other way would really be nonsense, if you think about it. That would mean that it would be until 2008. Maybe there was even a renewal. I mean, these happened to terminate in 2008 because that's what the parties decided. But maybe it's 2015. Maybe it's 2016. Money earned in 2003 would have to essentially be left sitting in a pot for ten years, even though you're clearly entitled to your commission, because who knows what might happen in the future? If a set of circumstances happens to come along where at the end of the game you owe money back to Lincoln, well, they'll claim that you breached your fiduciary duty by not leaving it in a pot. So the consequence of their interpretation really is not what the parties would have intended. And as sophisticated contracting parties, they could have very, very easily put a provision in this section of the contract that specified that all the money, even the commissions, even the LAE, everything you would have to act as a fiduciary towards that money, because after all, we don't know until the end of the relationship who's going to owe money to whom, because of the true-ups and all of that. The second sentence of 7.1 I also want to comment on, because I don't think they're reading it correctly. I think the district court reads it correctly, and it doesn't carry the weight that they're putting on it, because I think that the reason that that's in there, the privilege of retaining commissions should not be construed as changing the capacity insofar as those premiums go, is I think they're just trying to avoid a situation where there could be an argument that where you allow a trustee to commingle his funds and the trust's funds together that maybe perhaps the funds that are left lose their fiduciary characteristics, because after all, you agreed to commingle the funds, and I think that is there to avoid that potential future problem that someone might argue that the commingling of the funds somehow divested the clearly fiduciary funds of their fiduciary nature. We disagree with the district court and find that a fiduciary duty did exist. How should we deal with the plaintiff's filed a motion for summary judgment saying there was a breach. I mean, given the findings during the trial, is that tantamount to finding there was a breach? I mean, I understand you strongly disagree that the duty . . . Yeah, sure, and I disagree on the merits, but I also think that the answer to your question is no. I don't think that issue was tried. I think there's been a whole host of other issues, and in fact, you know, had the fiduciary duty claims been in the case by the time trial ran, it would have been a totally different trial in my view. So I don't think it's possible to do what you posit on that particular case. Well, isn't there an argument that a statutory fiduciary relationship created? I don't think that there is any argument that a statutory fiduciary agreement, fiduciary duty was created. I don't even think that they're really arguing that at that point. But the insurance code would not have created a fiduciary duty for several reasons. Obviously, the first reason is because the parties can set the contours of that duty. Even if there were a statutory duty, they could set the contours of it in a way, in any way that doesn't conflict directly with that statute. In other words, the parties couldn't say there is no fiduciary duty for the premiums in the premium trust account. Parties can't say that because the insurance code says you can't say that. In fact, you have to say the opposite in your contract. The statutory fiduciary duty issue would also be a problem for them because they're re-insurers, not insurers. I know they say that there's provisions of the insurance code that say re-insurers and insurer. But in this provision of the insurance code, the one at issue in this case, the managing general agency provision, it very clearly differentiates between insurers and re-insurers and never imposes a fiduciary duty in favor of a re-insurer. So I don't think there's any basis to assert that there's a statutory fiduciary duty in this case, Your Honor. Now, the point was made in the opening counsel that, and I think it bears some more attention, in that if there is a fiduciary duty found by virtue of 7.1, which again we disagree with, but as you can tell from the briefs, we have arguments and then sub-arguments and then alternatives to the alternatives. So we go pretty far down the rabbit hole on these things. But it does say that the fiduciary duty would run to state and county. And the summary judgment evidence is uncontroverted that state and county suffered no damages. They were entitled to be paid 2% of the premiums. And let's not forget, that's a lot of money. That would have made their payments over $6 million. So it's not that they're just this sort of entity that we can ignore exists in this transaction. It was a major part. Without them, there would have been no insurance program. And they were paid millions of dollars. But the important point is, is they were paid everything they were supposed to have been paid. And they testified as such in deposition, and that was in the summary judgment evidence. So therefore, there are no damages. Now, they say that, well, there could be fee forfeiture. But that wasn't pled. Now, they try to rescue that by saying, well, we asked for a constructive trust. Well, asking for a remedy such as constructive trust is not pleading the cause of action, the RC cause of action. That would actually turn everything backwards. I mean, you could see how causes of action might imply certain availability of remedies. But to say that you've asked for a remedy and imply from that that we pled a cause of action that we didn't plead is just backwards. It's crazy. It doesn't work. So there's no basis to claim that there's a fee forfeiture. It's just not in the case. And therefore, the damages part is dispositive. There's several provisions of these documents that they say essentially transfers these fiduciary duties, whatever they are, to them. But, again, they still stand in state and county's shoes. So those don't make any difference as long as the damage part is a valid argument, which we think it is. But even then, the articles that they cite do not do what they say they do. And I think the district judge analyzed the contract correctly and found that neither Article 19 of the Quotashare Agreement nor the preamble to the General Agency Agreement nor Section 2.6 somehow operate to transfer these fiduciary duties to Lincoln General. The arguments are, again, contract-based. Contracts that no one said is ambiguous. And the district judge, I think, correctly and thoroughly analyzed. What about your limitations argument? I'd love to talk about that. I'd love to talk about that. If they'd sued in 2006, what damages would they have had? If they brought a suit in 2006, they could have sought any number of remedies with the money that was transferred. They could have sought a constructive trust then, for example, on the money. They could have sought damages primarily for tortious – excuse me, we're talking about tortious interference. So I think the idea of the question here being solely one of what damages could they have sought at the time is a valid question. But it's not what I would say is the correct question. The correct question is could they have sought relief in court at that time from these actions? In other words, did they have a legal injury that they could have remedied? And the legal injury, according to them, was the transfers of the management fees from U.S. Auto to the entities that were contractually entitled to those fees, by the way. And the answer is if anybody does anything to disable their ability to perform in the future, that states a cause of action. I mean that's been the law for a very, very long time. And whether the remedy for that cause of action at the time they bring it is damages or some kind of equitable relief or some kind of constructive trust or whatever, that is – they could still bring the case. And they could have cut it off at the pass, as they say. So I think that the legal injury rule here, which is the test, applies. Not did damages accrue. Was there a legal injury? In a lot of ways it's similar to a latent – kind of a latent disease case where there are clearly no damages when there's a legal injury. Damages happen later. And it's not like I'm trying to create some kind of catch-22. There's a very simple answer to all this, and that's the discovery rule. That's what it's for. That's what it exists for, but they didn't plead it. The tortious interference cause of action in Texas, though, isn't one of the elements actual damage or loss? And that's the Texas Supreme Court. You have to have actual damage or loss to even have a claim for tortious interference. Yes. I think that there is an actual loss here. And that loss is the ability of the party to make the payments in the future. That's a loss. I mean it doesn't just say damages. It says loss. And to me it's a legal injury and a legal loss is what's happening at the time. Clearly you could have gone in and sought some kind of relief. If you see someone is dissipating their assets in a way that's going to disable them or someone they're somehow controlling from some kind of future performance, you don't have to sit by and let it happen. The law affords remedy. This claim for tortious interference that accrued, not – I mean – Yes, yes. But that's what it – I think that's what the cause of action is there. If it's the third party that is somehow helping the contracting party disable performance, your cause of action is for tortious interference. Let me ask you one more question about the tortious interference claim. Yes, Your Honor. Why is Maxwell – why did he not have the – why at least – is there not at least a question of fact that he had the intent to interfere with Alpha and CSI's contract with Lincoln? Okay. First let me clarify. I've got my parties a little screwed up. We know. I know what you're talking about. You'll help me with that. I'll help you with that, though, a little bit. Mr. Maxwell, we're talking about Jim Maxwell, the father now, not Doug Maxwell, the son. Well, both of them maybe. I mean – Well – Let's talk about both of them. Okay. Well, as far as tortious interference goes, I don't think – and I could be wrong – I don't think it was brought against Doug Maxwell because he's the president of the company that's the contracting party. So there may – I don't know that it was brought against him. Jim is the son. Jim is the father. Father. Jim the father was the president of CSI and Alpha, the management companies. Now, the reason that there wasn't a fact issue as to the interference with respect to Mr. Jim Maxwell is because the only evidence there was as far as Jim Maxwell went is that he was the president of the company that had the contract with U.S. Auto that provided for the payment of management fees. And that's simply not interfering with a contract. The fact that an individual who's the president of one company who's got a contract with a second company knows about that contract and knows that the company is performing under it, I mean that would open up a whole lot of people and a whole lot of companies to tortious interference is really not – Now, what he said was that he was the president of CSI and Alpha, and he certainly was the one who negotiated the agreements long ago with U.S. Auto even before Lincoln was on the scene, and he knew that the management fees were being paid. Now, that's a far different thing from being – from knowing somehow there was – Why wouldn't there be a question of fact as to whether he directed the payment? Well, because it was a no evidence summary judgment, and they didn't produce any evidence at all that created a fact issue that he was directing anything. Wasn't he running the show, though? I mean wasn't he running the – No, Doug Maxwell was the president and the shareholder of U.S. Auto, the one that was making the payments. So I would say that the district judge got that correct. My light is red. My time is zero, but I'm still available here. Okay. Thank you very much. Okay, Mr. Crosnell, back to you. Yes. On the issue about what you've seen is counsel trying to get in and wallow in the details of Section 7.2 of the General Agency Agreement, which is pretty complex, to override the express language of Section 7.1, which makes it clear that the fiduciary duty applies to all premiums, which were used to calculate commissions, and all funds. And surely if that means anything, it means that they couldn't do what they did here, which was, among other things, take money that should have gone to pay claims and distribute it to themselves, and also to take when they calculated their adjusted commissions to disregard a factor that the contractor acquired them to include in that calculation and use that to goose the calculation and have it show that they were owed money rather than owing us money. So the district court's interpretation reads out that express provision in Section 7.1, and as you heard in response to Judge Costa's hypothetical, or at least if I heard it correctly, the one about just taking all the money, even money that clearly belonged to Lincoln General, and going to Vegas and spending it all and then saying, well, too bad, no fiduciary duty ever arose because we never put the money in the trust account where it should have gone and where we were required to put it. And so that makes the whole fiduciary obligation meaningless. Why would we have ever contracted for such a meaningless obligation? We wouldn't have, and it makes no sense whatsoever. There has also been some argument. There was a mention that commission and premiums are different. Well, the commission, the premiums were used to calculate for certain the 20.6 commission that they were entitled to off the top, and we're not saying that they had to hold on to that 20.6% until the end of time, until the end of the agreement. They were entitled to that 20.6%, and they took it, but what they weren't entitled to do is goose their adjusted commission calculation and spend money that should have been used to pay claims with the result that we had to fund about $45 million in claims payments when they ran out of money to pay claims. And so that was a breach of fiduciary duty. Now, on this issue about whether the duty runs to Lincoln General as opposed to just state and county, we have the assignment, and then they come in and say, well, it's too bad because you were not damaged. And so what they're really arguing is that they only owed a fiduciary duty to a party that could never be damaged based on the terms of the contract because we were required to bear all the risk of loss. And so they're saying the fiduciary duty only applied to someone that could never be damaged, and even though you were damaged, the fiduciary duty didn't apply in your favor. And so either the assignment has got to help us out there or the fact that the plain provisions of this contract to which we were a party were written to indicate and make it very clear that they were acting on our behalf and doing these various things on our behalf. And so all of that was a breach of fiduciary duty. There was also some discussion about whether we could have sued on some sort of theory in 2006. The arguments, you know, there was a vague reference to damages, but in our view we had no damages at that point. And I think he's trying to say we could have sued on some sort of anticipatory breach theory, which is a contract theory that would have applied in favor of U.S. auto, and that doesn't really have anything to do with the breach of fiduciary duty and the tortious interference claims that we have against separate parties. So we did not have a damage, which is an element of a tortious interference claim at that time. The legal injury was not the transfers. Those ultimately caused damage, but it caused damage down the road in 2006 and 2007, and we brought suit within a year of that. That's all I have, and my time is almost out unless the Court has any questions. Okay. Thank you very much. Thank you for your argument.